

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** GLR-19-032 |
| v. | (Conspiracy to Commit Bank Fraud, 18 |
| | U.S.C. § 1349; Bank Fraud, 18 U.S.C. § |
| **DAVID LIVINGSTON ATTOH,** | 1344; Aggravated Identity Theft 18 |
| **ERWIN BOATENG,** | U.S.C. 1028A; Aiding and Abetting, 18 |
| **KABIR TUNJI ARE,** | U.S.C. § 2; Forfeiture). |
| **KWAKU BOATENG BLAY,** | |
| a/k/a "Kwaku Boaten Blay," and | |
| **FRANCK ULRICH NOCHE NSIYABNZE,** | |
| | |
| Defendants. | |

## INDICTMENT

## COUNT ONE
### (Bank and Wire Fraud Conspiracy)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

1.      **DAVID LIVINGSTON ATTOH ("ATTOH")** age 31, is a citizen of Ghana, a lawful permanent resident of the United States, and a resident of Laurel, Maryland.

2.      **ERWIN BOATENG ("BOATENG")** age 30, is a citizen of the United States, a resident of Glen Burnie, MD, and a former resident of Columbus, OH.

3.      **KABIR TUNJI ARE ("ARE"),** age 30, is a citizen of Nigeria, and a resident of Silver Spring, MD.

4.      **KWAKU BOATENG BLAY, a/k/a "Kwaku Boaten Blay," ("BLAY"),** age 35, is a citizen of Ghana, and a resident of Beltsville, MD.

5.      **FRANCK ULRICH NOCHE NSIYABNZE ("NSIYABNZE"),** age 27, is a

citizen of the United States, and a resident of Laurel, MD.

## The Bank of America (BOA) (FIA Card Services) Account Victims

6.    The following business victims had credit card accounts with BOA: D AND J

PRINTING; GRASPOINTER MANAGEMENT CO., INC.; K AND P CAPITAL, INC.; TVJ

SONS, INC.; LIGHTHOUSE ELECTRIC, INC.; TRIPLE D PLANTING CO II; and PAVING

SYSTEMS.

## The Identity Theft Victims

7.    The following individual victims had their identities stolen which were used to

open bank accounts without their knowledge: D.S.; M.H.; C.R.H.; and N.N.R.

## The Bank Victims

8.    The Bank Victims include, but are not limited to: BB&T bank ("BB&T");

Bank of America ("BOA"); Citizens Bank ("Citizens"); Educational Systems Federal Credit

Union ("ESFCU"); PNC Bank ("PNC"); and Wilmington Savings Fund Society ("WSFS"). Each

of these banks are financial institutions as those terms are used in Title 18, United States Code,

Section 1344 and defined in Title 18, United States Code, Section 20.

## The Conspiracy and the Scheme to Defraud

9.    Beginning in or about September of 2015 and continuing until in or about June of

2016, in the District of Maryland and elsewhere, the defendants,

**DAVID LIVINGSTON ATTOH,**
**ERWIN BOATENG,**
**KABIR TUNJI ARE,**
**KWAKU BOATENG BLAY,**
**a/k/a "Kwaku Boaten Blay," and**
**FRANCK ULRICH NOCHE NSIYABNZE,**

knowingly and willfully, conspired and agreed together and with others known and unknown to

the Grand Jury to commit any offense under chapter 63 of Title 18, United States Code, namely:

to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud financial institutions, and to obtain and attempt to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code Section 1344.

## **BACKGROUND**

### **Automated Clearing House (ACH) Transactions**

10.     The automated clearinghouse (ACH) system is a nationwide network through which depository institutions send each other batches of electronic credit and debit transfers. The direct deposit of payroll, social security benefits, and tax refunds are typical examples of ACH credit transfers. The direct debiting of mortgages and utility bills are typical examples of ACH debit transfers. While the ACH network was originally used to process mostly recurring payments, the network is today being used extensively to process one-time debit transfers, such as converted check payments and payments made over the telephone and Internet.

### **FIA Card Services (DCB) Transactions**

11.     When BOA acquired Maryland Bank National Association ("MBNA") in 2005, the credit card servicing portion of the business was renamed to FIA ("Financial Institutions Association") Card Services. From late 2006 onward, anyone holding an MBNA-issued credit card was transitioned over to FIA Card Services to service their credit card account. Bank of America also uses FIA Card Services as the service arm for many of its own credit card offerings. Direct carrier billing (DCB) is a type of online payment that allows consumers to charge the cost of a purchase to their phone bill. This online payment method is applicable to all smartphone and feature phone users. Also called "direct operator billing" and "mobile content billing," this was the telephone company's method for charging additional services, such as long distance and pay-

3

per-minute 900 numbers. With the advent of smartphones, direct carrier billing lets users make a purchase via their phone from compliant merchants without entering credit card data.

**Object of the Conspiracy and Scheme to Defraud**

12.      It was the object of the conspiracy and scheme to defraud to open and to takeover bank accounts in the name of other individuals and businesses for the purpose of obtaining money and funds by fraud.

13.      It was a further object of the conspiracy and scheme to defraud to create fraudulent checks and wires in the name of businesses and deposit them in various bank accounts for the purpose of obtaining money and funds from banks by fraud.

**Manner and Means of the Conspiracy and Scheme to Defraud**

14.      It was part of the conspiracy and scheme to defraud that **ATTOH, BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would open and cause to be opened bank accounts in their names and in the names of the Identity Theft Victims.

15.      It was further part of the conspiracy and scheme to defraud that **ATTOH, BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would obtain account information of the Identity Theft Victims and the BOA FIA Card Service Account Victims, and initiate and cause to be initiated transfers and deposits of money to the bank accounts they had set up.

16.      It was further part of the conspiracy and scheme to defraud that **ATTOH, BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would then withdraw and cause to be withdrawn the unlawfully transferred funds from the bank accounts they had set up.

17.      It was further part of the conspiracy and scheme to defraud that **ATTOH,**

4

**BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would transfer and cause to be transferred funds between business and personal accounts at various financial institutions.

18. It was further part of the conspiracy and scheme to defraud that **ATTOH, BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would withdraw and cause to be withdrawn funds from the initial business account they had created, either in cash or in the form of a bank or cashier check, and deposit said funds into a personal account of a co-conspirator at a different financial institution.

19. It was further part of the conspiracy and scheme to defraud that **ATTOH, BOATENG, ARE, BLAY, NSIYABNZE,** and others known and unknown to the Grand Jury, would split the proceeds of the funds they were able to withdraw.

20. It was further part of the conspiracy and scheme to defraud that the defendants would communicate with one another via phone and text message.

<u>**Acts in Furtherance of the Conspiracy and Scheme to Defraud**</u>

21. The allegations contained in Paragraphs 1 through 7 of Count Two; Paragraphs 1 through 4 of Count Three; Paragraphs 1 through 4 of Count Four; Paragraphs 1 through 12 of Count Five; Paragraphs 1 through 6 of Count Six; Paragraphs 1 through 3 of Count Seven; Paragraphs 1 through 10 of Count Nine; Paragraphs 1 through 5 of Count Ten; Paragraphs 1 through 3 of Count Eleven; Paragraphs 1 through 4 of Count Thirteen; Paragraphs 1 through 4 of Count Fifteen; and Paragraphs 1 through 4 of Count Sixteen, respectively, of this Indictment, are incorporated by reference here.

18 U.S.C. § 1349

## COUNT TWO
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.  On or about September 14, 2015, **ATTOH** opened two ESFCU checking accounts (XXX0033-3 and XXX0033-6) and one savings account (XXX0033-0), in the name of David Livingston **ATTOH**. At the time of account opening, **ATTOH** listed A.A. as his brother and sponsoring family member. **ATTOH** also listed an address in Silver Spring, MD, as his address and XXX-XXX-4227 as his phone number.

2.  On or about October 15, 2015, **ATTOH** and others known and unknown to the Grand Jury, deposited, and caused to be deposited, a fraudulent ACH credit in the amount of $45,000 into **ATTOH's** ESFCU XXX0033-6 checking account. Prior to this credit, the balance in the account was $0.

3.  Between October 16, 2015 and October 21, 2015, nine withdrawals were made from **ATTOH's** ESFCU XXX0033-6 checking account. These transactions included a $3,002.10 withdrawal at the Wal-Mart Super Center Hanover location, and two separate withdrawals ($3,002.10 and $1,000.70) Wal-Mart Super Center Severn location. There were also three cash withdrawals made on or about the following dates: October 16, 2015 in the amount of $2,500.00; October 19, 2015 in the amount of $2,500.00; and October 21, 2015 in the amount of $450.00. In addition, three cashier's checks were purchased between October 16, 2015 and October 19, 2015 ($9,000.00, $8,000.00, and $7,000.00), that were made payable to David LIVINGSTON **ATTOH**.

4.  On or about October 16, 2015, **ATTOH** and others known and unknown to the Grand Jury, transferred and caused to be transferred $8,500.00 from **ATTOH's** ESFCU

6

XXX0033-6 checking account to **ATTOH's** ESFCU XXX0033-3 checking account. On or about

October 19, 2015, a cashier's check for $8,000.00 was made payable to David LIVINGSTON

ATTOH from **ATTOH's** ESFCU XXX0033-3 checking account. On or about October 21, 2015,

two separate cash withdrawals for $202.50 were made in Silver Spring, MD. On or about

October 22, 2015, a cash withdrawal for $102.50 was made in Silver Spring, MD. As of October

21, 2015, the balance in **ATTOH's** ESFCU XXX0033-6 checking account was $45.10.

     5.     On November 17, 2015, BOA sent ESFCU a hold harmless agreement indicating

that the fraudulent $45,000.00 ACH transfer deposited into **ATTOH's** ESFCU XXX0033-6

checking account was an unauthorized transfer from the BOA account XXXX XXXX XXXX

8333 in the name of GRASPOINTER MANAGEMENT CO. INC.

     6.     On or about November 16, 2015, $20.00 was transferred from **ATTOH's** ESFCU

XXX0033-6 checking account to **ATTOH's** ESFCU XXX0033-3 checking account. On or about

November 18, 2015, $20.00 was transferred from **ATTOH's** ESFCU XXX0033-3 checking

account to **ATTOH's** ESFCU XXX0033-0 savings account. On or about November 18, 2015,

$25.10 was also transferred from **ATTOH's** ESFCU XXX0033-6 checking account to **ATTOH's**

ESFCU XXX0033-0 savings account.

     7.     On or about November 18, 2015, ESFCU forced a withdrawal from **ATTOH's**

savings account ($53.73) in the form of cashier checks payable to BOA, leaving the account

balance at $5.00.

     8.     Beginning on or about September 14, 2015 and continuing through on or about

November 18, 2015, in the District of Maryland, and elsewhere, the defendant,

**DAVID LIVINGSTON ATTOH,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud

financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent ACH credit into account(s) at ESFCU, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT THREE
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.      On or about September 25, 2015, **ARE** opened ESFCU checking account number XX1101-6. At the time of account opening, **ARE** listed N.Q. as his brother and sponsoring member.

2.      On or about September 30, 2015, **ARE** and others known and unknown to the Grand Jury, deposited, and caused to be deposited, a fraudulent ACH credit in the amount of $4,713.14 was into **ARE'S** ESFCU XX1101-6 checking account. This deposit was described as FIA CARD SVCS (DCB PAYMNT). Prior to this deposit, the balance in this account was $61.94. On this same day, **ARE** and others known and unknown to the Grand Jury, withdrew and caused to be withdrawn, $2,500.00 in cash from **ARE'S** ESFCU XX1101-6 checking account.

3.      On October 1, 2015, **ARE** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn from **ARE'S** ESFCU XX1101-6 checking account an additional $503.00 in cash from the ESFCU Greenbelt Road branch in Greenbelt, MD, and $1,651.40 at the Wal-Mart Super Center in Laurel, MD. Several other debits were posted to the account in October 2015, eventually leaving the account with a balance of $5.00 as of October 31, 2015.

4.      On November 17, 2015, BOA sent ESFCU a hold harmless agreement indicating that the fraudulent $4,713.14 ACH transfer deposited into **ARE'S** ESFCU XX1101-6 checking account had been transferred from BOA account XXXX XXXX XXXX 5103 in the name of LIGHTHOUSE ELECTRIC, INC.

5.    Beginning on or about September 25, 2015 and continuing through on or about

October 31, 2015, in the District of Maryland, and elsewhere, the defendant,

**KABIR TUNJI ARE,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud

financial institutions, and to obtain monies, funds and credits of financial institutions, and under

the custody and control of financial institutions, by means of materially false and fraudulent

pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a

fraudulent ACH credit into an account(s) at ESFCU, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT FOUR
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.      On or about October 16, 2015, **NSIYABNZE** opened three accounts at ESFCU (XX2592-0 (savings), XX2592-1 (savings), and XX2592-6 (checking)). At the time of account opening, **NSIYABNZE** listed Kabir ARE as his brother and sponsoring member.

2.      On or about December 30, 2015, **NSIYABNZE** and others known and unknown to the Grand Jury deposited and caused to be deposited a fraudulent ACH credit in the amount of $13,500.00 into **NSIYABNZE's** ESFCU XX2592-6 checking account. This deposit was described as FIA CARD SVCS (DCB PAYMNT). Also on or about December 30, 2015, **NSIYABNZE** and others known and unknown to the Grand Jury made three cash withdrawals ($5,000.00, $2,500.00, $500.00) from **NSIYABNZE's** ESFCU XX2592-6 checking account.

3.      On or about December 31, 2015, **NSIYABNZE** and others known and unknown to the Grand Jury made four additional cash withdrawals totaling $1,210.55 from **NSIYABNZE's** ESFCU XX2592-6 checking account, two at the Wal-Mart Super Center in Laurel, MD.

4.      On or about January 19, 2016, ESFCU received a hold harmless and indemnification agreement from BOA indicating that the fraudulent $13,500.00 deposit of the ACH credit into **NSIYABNZE's** ESFCU XX2592-6 checking account had been sent from BOA customer TVJ SONS, INC. account XXXX XXXX XXXX 1170.

5.      Beginning on or about October 16, 2015 and continuing through in or about January 2016, in the District of Maryland, and elsewhere, the defendant,

11

**FRANK ULRICH NOCHE NSIYABNZE,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent ACH credit into an account(s) at ESFCU, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT FIVE
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1. On or about October 19, 2015, **BLAY** opened two accounts at ESFCU (XX2682-0 and XX2682-3). At the time of account opening, **BLAY** listed Kabir **ARE** as his brother and sponsoring member.

2. On or about October 31, 2015, **BLAY** and others known and unknown to the Grand Jury deposited and caused to be deposited into **BLAY's** ESFCU XX2682-3 checking account PNC check 1002 drawn on the PNC account of N.L./A.L. (account number XX-XXXX-0004) written to Kwaku B. **BLAY** for $6,700.00. Prior to this deposit, the balance in the account was $30.00.

3. On or about November 13, 2015, **BLAY** and others known and unknown to the Grand Jury deposited and caused to be deposited a fraudulent ACH credit described as "Fia Card SVCS (DCB Paymt)" in the amount of $49,377.05 into **BLAY's** ESFCU XX2682-3 checking account. Prior to the deposit of this DCB Payment ACH Credit, the balance in the account was $1,027.64.

4. On or about November 13, 2015, **BLAY** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $4,850.00 in cash, and received two cashier's checks in the amount of $8,650.00 and $9,400.00, both made payable to Kwaku B. **BLAY**, all form **BLAY's** ESFCU XX2682-3 checking account.

5. On or about November 14, 2015, **BLAY** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $5,000.00 in cash, and received a cashier's

check in the amount of $8,600.00 made payable to K.J., from **BLAY's** ESFCU XX2682-3 checking account.

6.      On or about November 15, 2015, **BLAY** and others known and unknown to the Grand Jury transferred and caused to be transferred $10,200.00 from **BLAY's** ESFCU XX2682-3 checking account to **BLAY's** ESFCU XX2682-0 savings account. Prior to this transfer, the balance in **BLAY's** ESFCU XX2682-0 savings account was $35.00.

7.      On or about November 16, 2015, **BLAY** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $503.00 in cash in Laurel, MD, and $3,005.94 at the Giant in Laurel, MD from **BLAY's** ESFCU XX2682-3 checking account. As of November 18, 2015, the balance in **BLAY's** ESFCU XX2682-3 checking account was $0.00.

8.      On November 17, 2015, BOA sent ESFCU a hold harmless agreement indicating that the fraudulent $49,377.05 ACH transfer deposited into **BLAY's** ESFCU XX2682-3 checking account had been transferred from the BOA account XXXX XXXX XXXX 8333 in the name of GRASPOINTER MANAGEMENT CO. INC.

9.      On November 18, 2015, ESFCU withdrew $10,301.19 from **BLAY's** ESFCU XX2682-0 savings account in the form of a cashier's check payable to BOA. This left a balance of $5.00 in the account.

10.     On or about November 19, 2015 two "stopped check" refunds were credited to **BLAY's** ESFCU XX2682-0 savings account in the amounts of $8,650.00 and $9,400.00.

11.     On or about November 20, 2015, a deposit of $8,600.00 was credited to **BLAY's** ESFCU XX2682-0 savings account. This deposit was the result of the reversal of a cashier's check payable to K.J.

12.     On or about January 31, 2016, account XX2682-0 showed a balance of $26,655.00.

13.     Beginning on or about October 19, 2015 and continuing through on or about November 20, 2015, in the District of Maryland, and elsewhere, the defendant,

**KWAKU BOATENG BLAY,**
**a/k/a "Kwaku Boaten Blay,"**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent check/ DCB Payment ACH Credit into an account(s) at ESFCU and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT SIX
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.    On or about October 26, 2015, **BLAY** opened two accounts at PNC (XX-XXXX-0004 and XX-XXXX-0039) in the name of "Niicholas" L.(N.L.)/A.L., with $20 and $30 deposits, respectively.

2.    On or about October 30, 2015, **BLAY** and others known and unknown to the Grand Jury deposited and caused to be deposited into PNC account XX-XXXX-0004 a U.S. Treasury Check written to N.L./A.L. in the amount of $10,676.25.

3.    On or about November 2, 2015, **BLAY** and others known and unknown to the Grand Jury issued and caused to be issued check 1002 from PNC account XX-XXXX-0004, written for $6,700.00 to Kwaku B. **BLAY**, which was deposited into **BLAY's** ESFCU XX2682-3 checking account.

4.    On or about November 2, 2015, **BLAY** and others known and unknown to the Grand Jury issued and caused to be issued check 1003 from PNC account XX-XXXX-0004, written for $3,000.00 to Kwaku B. **BLAY**, which was negotiated, and the funds were withdrawn from PNC account XX-XXXX-0004.

5.    On or about November 2, 2015, **BLAY** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $1,000.00 from PNC account XX-XXXX-0004 at the Giant in Hyattsville, Maryland.

6.    On or about November 19, 2015, both PNC accounts (XX-XXXX-0004 and XX-XXXX-0039) in the name of N.L./A.L. were closed with payoff debits of $6.25 and $20.00,

respectively.

7.      Beginning on or about October 26, 2015 and continuing through on or about November 19, 2015, in the District of Maryland, and elsewhere, the defendant,

**KWAKU BOATENG BLAY,**
**a/k/a "Kwaku Boaten Blay,"**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent check into an account(s) at PNC and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT SEVEN
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.     On or about November 5, 2015, **BLAY** opened two accounts at ESFCU (XX3903-0 and XX3903-6) at the ESFCU branch in Upper Marlboro, MD, in the name "Mattew" H. (M.H.) (DOB: XX/XX/1980 and SSN: XXX-XX-6393). At the time of account opening, **BLAY** listed Kabir **ARE** as his brother and sponsoring member. The account opening documentation provided by ESFCU also contains a photocopy of a Washington, D.C. driver's license (#1563274) in the name M.H., but displaying a photograph of Kwaku Boateng **BLAY**.

2.     On or about November 19, 2015, **BLAY** and others known and unknown to the Grand Jury deposited and caused to be deposited a fraudulent ACH credit from FIA CARD SERVICES (DCB PAYMNT) in the amount of $21,943.76 into the **BLAY**/M.H. ESFCU XX3903-6 checking account.

3.     On or about November 20, 2015, this deposit was reversed and withdrawn from the account and returned to BOA after BOA sent ESFCU a hold harmless agreement indicating that the deposit of the fraudulent $21,943.76 ACH credit into the **BLAY**/M.H. ESFCU XX3903-6 checking account had been transferred from BOA account XXXX XXXX XXXX 6943 in the name of K AND P CAPITAL INC.

4.     Beginning on or about November 5, 2015 and continuing through on or about November 20, 2015, in the District of Maryland, and elsewhere, the defendant,

**KWAKU BOATENG BLAY,**
**a/k/a "Kwaku Boaten Blay,"**

18

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent ACH credit into an account(s) at ESFCU, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## <u>COUNT EIGHT</u>
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 8 and 10 through 21 of Count One, and pararaphs 1 through three of Count Seven of the Indictment are incorporated by reference here.

2.     Beginning on or about November 5, 2015 and continuing through on or about November 20, 2015, in the District of Maryland and elsewhere, the defendant,

### KWAKU BOATENG BLAY,
### a/k/a "Kwaku Boaten Blay,"

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the defendant used the means of identification of M.H. during and in relation to conspiracy to commit bank and bank fraud, under 18 U.S.C. §§ 1349 and 1344, as set forth in Counts One and Seven of the Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## COUNT NINE
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.  On or about November 6, 2015, **BOATENG** opened a savings and a checking account (XX3945-0 and XX3945-3, respectively) at the Greenbelt, MD branch of ESFCU. At the time of account opening, **BOATENG** identified M.H. as his brother and sponsoring member.

2.  On or about November 12, 2015, **BOATENG** and others known and unknown to the Grand Jury deposited and caused to be deposited a fraudulent ACH credit from FIA CARD SVCS (DCB PAYMNT) in the amount of $31,343.12 into **BOATENG's** ESFCU XX3945-3 checking account. Prior to this ACH Credit, the balance in this account was $0.

3.  On or about November 12, 2015, **BOATENG** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $4,500.00 in cash and $10,000.00 in the form of a cashier's check payable to Erwin **BOATENG** from **BOATENG's** ESFCU XX3945-3 checking account.

4.  On or about November 13, 2015, **BOATENG** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $8,000.00 in the form of a cashier's check made payable to Erwin **BOATENG** from **BOATENG's** ESFCU XX3945-3 checking account.

5.  On or about November 14, 2015, **BOATENG** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $1,734.00 and $500.00, both described as "DC TICKET PAYMENT WEB", from **BOATENG's** ESFCU XX3945-3 checking account.

6.  On November 17, 2015, BOA sent ESFCU a hold harmless agreement indicating that the fraudulent $31,343.12 ACH transfer deposited into **BOATENG's** ESFCU XX3945-3

21

checking account had been sent from the BOA account of D and J PRINTING, INC.

7. On or about November 18, 2015, **BOATENG** and others known and unknown to the Grand Jury transferred and caused to be transferred $6,553.33 from **BOATENG's** ESFCU XX3945-3 checking account to **BOATENG's** ESFCU XX3945-0 savings account, leaving **BOATENG's** ESFCU XX3945-3 checking account balance at $0.00.

8. On or about November 18, 2015, ESFCU forced two withdrawals from **BOATENG's** ESFCU XX3945-0 savings account ($6.00 and $6,578.33) in the form of cashier checks payable to BOA.

9. On November 23, 2015, two deposits in the amounts of $8,000 and $10,000 were credited to **BOATENG's** ESFCU XX3945-0 savings account. These deposits were described as "Deposit CK 80013583 STOP PAYMENT" and "Deposit CK 80013576 STOP PAYMENT", which were both cashier's checks made payable to Erwin **BOATENG**. As of December 31, 2015, **BOATENG's** ESFCU XX3945-0 savings account balance was $18,005.96, but the funds were not accessible to **BOATENG**.

10. On November 24, 2015, **BOATENG** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $100.01, described as "EZPASS", **BOATENG's** ESFCU XX3945-3 checking account which left the account with a negative balance of $100.01.

11. Beginning on or about November 6, 2015 and continuing through on or about November 24, 2015, in the District of Maryland and elsewhere, the defendant,

**ERWIN BOATENG,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent

22

pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent ACH credit from FIA CARD SVCS (DCB PAYMNT) into an account(s) at ESFCU, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT TEN
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.      On or about November 28, 2015, **ARE** opened an account (XXXXXX4257) at WSFS Bank in Wilmington, DE using an address in Laurel, MD, as his address and a New Jersey identification card (#AXXXXXXXXXXXX6872).

2.      On December 11, 2015, **ARE** and others known and unknown to the Grand Jury deposited and caused to be deposited into **ARE's** WSFS XXXXX4257 checking account a fraudulent $45,000 Automated Clearing House (ACH) deposit from FIA Card services. On this same day, **ARE** and others known and unknown to the Grand Jury made two withdrawals within an hour totaling $16,000 ($9,000 and $7,000) at the College Square branch of WSFS.

3.      On December 12, 2015, **ARE** and others known and unknown to the Grand Jury withdrew $12,000 again from the College Square branch of WSFS. Later in the day **ARE** and others known and unknown to the Grand Jury withdrew another $5,000 at the West Newark (DE) branch of WSFS.

4.      Between December 11 and December 13, 2015, **ARE** and others known and unknown to the Grand Jury caused a number of transactions regarding **ARE's** WSFS XXXXX4257 checking account, including, but not limited to, the following (all of which cleared on December 14, 2015): one purchase from Silver Spring Giant for $1,753.96; two purchases from Silver Spring Giant for $1,502.97 each ($3,005.94 total); three cash withdrawals for $303 each ($909 total); and other transactions which left the account with a balance of $6,313.54.

5.      WSFS closed **ARE's** WSFS XXXXX4257 checking account with a $6,313.54

withdrawal in the form of a cashier's check to BOA, which cleared on January 27, 2016.

6. Beginning on or about November 28, 2015 and continuing through on or about December 12, 2015, in the District of Maryland and elsewhere, the defendant,

**KABIR TUNJI ARE,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent ACH deposit from FIA card services into an account(s) at WSFS, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

**COUNT ELEVEN**
**(Bank Fraud)**

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.    On or about February 29, 2016, **BOATENG** opened a personal checking account in the name D.S. (XXXXX9456) and a small business checking account in the name "DXXXXX," LLC (XXXXX1217) at WSFS Bank, with cash deposits of $100 into each. At the time of account opening, **BOATENG** identified himself as D.S. (SSN: XXX-XX-3157) and presented a fraudulent Maryland Driver's License (S-XXX-XXX-XXX-606), DOB: XX/XX/1982. This fraudulent Maryland driver's license displays a photograph of Erwin **BOATENG**.

2.    On an unknown data at an unknown time, but after February 29, 2016, **BOATENG** and others known and unknown to the Grand Jury deposited and caused to be deposited into the **BOATENG**/"DXXXXX, LLC" WSFS XXXXX1217 small business checking account two fraudulent ACH Credits, $45,000.00 and $37,500.00, respectively. These two transactions were blocked by WSFS Bank and returned to BOA.

3.    On or about March 9, 2016, **BOATENG,** identifying himself as R.R.R., appeared at the College Square WSFS Bank branch and presented a WSFS check drawn on the **BOATENG**/ D.S. XXXXX9456 personal checking account in the amount of $12,000, made out to R.R.R. **BOATENG** presented a fraudulent Pennsylvania Driver's License. The check was first declined by the bank because it was not dated. **BOATENG** came back at approximately 1245hrs and the check was declined again. At 1301hrs, **BOATENG** and others known and unknown to the Grand Jury alleging to be D.S. called the bank from phone number (XXX) XXX-6560, which is the phone number associated with **BOATENG's** email account "TeamQHF@GMAIL.com", and inquired

26

why the check had not been honored, and the bank informed this person that there were no funds in the account.

4.       Beginning on or about February 29, 2016 and continuing through on or about March 9, 2016, in the District of Maryland and elsewhere, the defendant,

**ERWIN BOATENG,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, fraudulent ACH Credits into an account(s) at WSFS and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT TWELVE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 8 and 10 through 21 of Count One, and paragraphs 1 through 3 of Count Eleven of the Indictment are incorporated by reference here.

2.      Beginning on or about February 29, 2016 and continuing through on or about March 9, 2016, in the District of Maryland and elsewhere, the defendant,

### ERWIN BOATENG,

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the defendant used the means of identification of D.S. during and in relation to conspiracy to commit bank fraud, and bank fraud, under 18 U.S.C. §§ 1349 and 1344, as set forth in Counts One and Eleven of the Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## COUNT THIRTEEN
## (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1. On or about December 16, 2015, **ATTOH** identified himself as N.N.R. (SSN/EIN/TIN: XXX-XX-6808), DBA "NXXXX RXXXX," presented MD Driver's License Number RXXXXXXXX4930 as identification, and opened account number XXXXXXXX5828 at BB&T Bank. **ATTOH** also provided the cellular phone number of (XXX)-XXX-6237.

2. On or about April 13, 2016, **ATTOH** and others known and unknown to the Grand Jury deposited and caused to be deposited an electronic deposit described as "Rfnd Disb EPS D.H." in the amount of $6,109.10 was credited into the **ATTOH/"N.N.R."** BB&T XXXXXXXX5828 checking account.

3. On or about April 13, 2016, **ATTOH** and others known and unknown to the Grand Jury wrote two checks drawn on the **ATTOH/"NR"** BB&T XXXXXXXX5828 checking account: check #202 made payable to GEM CONSULTANT, LLC., in the amount of $2,800.00; and check #203 made payable to GEM ACCOUNTING, LLC., in the amount $3,200.00.

4. On or about June 28, 2016, **ATTOH** and others known and unknown to the Grand Jury deposited and caused to be deposited check number 1006, drawn on the account of A.H., with an address in Laurel, MD, for $1,500.00 into the **ATTOH/"NR"** BB&T XXXXXXXX5828 checking account.

5. Beginning on or about December 16, 2015 and continuing through on or about June 28, 2016, in the District of Maryland and elsewhere, the defendant,

## DAVID LIVINGSTON ATTOH,

29

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent transfer into an account(s) at BB&T Bank, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT FOURTEEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 8 and 10 through 21 of Count One, and paragraphs 1 through X of Count Thirteen of the Indictment are incorporated by reference here.

2.      Beginning on or about December 16, 2015 and continuing through on or about June 28, 2016, in the District of Maryland and elsewhere, the defendant,

### DAVID LIVINGSTON ATTOH,

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the defendant used the means of identification of N.N.R., during and in relation to conspiracy to commit bank fraud, and bank fraud, under 18 U.S.C. §§ 1349 and 1344, as set forth in Counts One and Thirteen of the Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## COUNT FIFTEEN
### (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One of the Indictment are incorporated here.

1.    On or about February 27, 2016, **NSIYABNZE** opened checking account XXXXXX7319 at Citizens Bank branch (#318) in York, PA, utilizing the identity of C.R.H. (TIN: XXX-XX-3885). **NSIYABNZE** also provided the address in Laurel, MD 20708.

2.    On or about March 2, 2016, **NSIYABNZE** and others known and unknown to the Grand Jury deposited and caused to be deposited into the **NSIYABNZE**/"C.R.H." XXXXXX7319 checking account a fraudulent electronic credit of $10,456.73 described as "Fia Card Svcs Dcb Paymnt 160229 D Planting Co I" from BOA account "Triple D Planting Co II" account XXXX XXXX XXXX 2050.

3.    On or about March 2, 2016, **NSIYABNZE** and others known and unknown to the Grand Jury withdrew and caused to be withdrawn $5,400.00 from the Eastern York, PA branch of Citizens Bank, claiming to be C.R.H. A portion of this money was used to fund two new business accounts: (1) a business account in the name of C.R.H. d/b/a C.R.H. (XXXXXX7106); and (2) a personal account in the name of C.R.H. (XXXXXX6879). The remaining $5,000.00 was withdrawn in cash. Ten minutes later this same person returned to the bank and purchased an official bank check made payable to R.K. in the amount of $5,000.00.

4.    On a date after March 2, 2016, BOA notified Citizens bank that the $10,456.73 credit resulted from an impersonation/rewards points scam on their business client "D. Planting." On June 2, 2016, **NSIYABNZE**/"CRH" XXXXXX7319 checking account was closed; at that time it had a $66.76 balance.

5.      Beginning on or about February 27, 2016 and continuing through on or about June 2, 2016, in the District of Maryland and elsewhere, the defendant,

**FRANK NOCHE NSIYABNZE,**

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent FIA Card Services credit into an account(s) at Citizens Bank, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT SIXTEEN
### (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

The allegations set forth in Paragraphs 1 through 8 and 10 through 21 of Count One and paragraphs 1 through 4 of Count Fifteen of the Indictment are incorporated here.

1.      On or about March 18, 2016, **NSIYABNZE** and others known and unknown to the Grand Jury deposited and caused to be deposited into the business account in the name of C.R.H. d/b/a C.R.H. (XXXXXX7106) a fraudulent electronic credit of $34,500.00 described as "Fia Card Svcs Dcb Paymnt 160316 Paving System I".

2.      On or about March 21, 2016, Citizens Bank received notification from BOA that the transfer was fraudulent, and a hold was placed on the business account in the name of C.R.H. d/b/a C.R.H. (XXXXXX7106) preventing the funds from being dissipated.

3.      On or about March 22, 2016, **NSIYABNZE** and others known and unknown to the Grand Jury deposited and caused to be deposited into the business account in the name of C.R.H. d/b/a C.R.H. (XXXXXX7106) a fraudulent electronic credit of $34,500.00 described as "Fia Card Svcs Dcb Paymnt 160316 Paving System I".

4.      On or about May 4, 2016, the second $34,500.00 credit was returned, noted on the bank statement as, "03-17-16 Forged or Counterfeit Check 001526092000320."

5.      Beginning on or about February 27, 2016 and continuing through on or about March 18, 2016, in the District of Maryland and elsewhere, the defendant,

### FRANK NOCHE NSIYABNZE,

knowingly and willfully executed and attempted to execute a scheme and artifice to defraud financial institutions, and to obtain monies, funds and credits of financial institutions, and under the custody and control of financial institutions, by means of materially false and fraudulent

34

pretenses, representations and promises; to wit, by depositing, or causing to be deposited, a fraudulent FIA Card Services credit into an account(s) at Citizens Bank, and withdrawing monies therefrom.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT SEVENTEEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 8 and 10 through 21 of Count One, paragraphs 1 through 4 of Count Fifteen, and paragraphs 1 and 2 of Count Sixteen of the Indictment are incorporated by reference here.

2.      Beginning on or about February 27, 2016 and continuing through on or about June 2, 2016, in the District of Maryland and elsewhere, the defendant,

### FRANK NOCHE NSIYABNZE,

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the defendant used the means of identification of C.R.H. during and in relation to conspiracy to commit bank fraud, and bank fraud, under 18 U.S.C. §§ 1349 and 1344, as set forth in Counts One, Fifteen, and Sixteen of the Indictment.

18 U.S.C. §§ 1028A(a)(1), (c)(5)
18 U.S.C. § 2

## FORFEITURE

1.      The allegations contained in Count One through Seventeen are realleged and incorporated here for the purpose of alleging forfeiture.

2.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to David Livingston **ATTOH**, Erwin **BOATENG**, Kabir Tunji **ARE**, Kwaku Boateng **BLAY**, and Frank Ulrich Noche **NSIYABNZE** that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. Section 2461(c), upon conviction of an offense in violation of 18 U.S.C. §§ 1349 and 1344, **ATTOH, BOATENG, ARE, BLAY**, and **NSIYABNZE** shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the scheme to defraud.

3.      The property to be forfeited includes, but is not limited to, the following:

        a.      A sum of money equal to the value of the proceeds of the scheme to defraud, which amount is at least $188,000; and

        b.      The merchandise fraudulently obtained during the course of the scheme detailed above.

4.      If any of the property described above, as a result of any act or omission of **ATTOH, BOATENG, ARE, BLAY**, and **NSIYABNZE**:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
Rule 32.2(a), F.R.Crim.P.

_Robert K. Hur by JTM_
ROBERT K. HUR
UNITED STATES ATTORNEY

A TRUE BILL:

_January 23, 2019_
Date

**SIGNATURE REDACTED**
Foreperson